CLARK D. GILLESPIE, ADMINISTRATOR, V. CITY OF LINCOLN.

[FILED JUNE 11, 1892.]

1. **Municipal Corporations:** FIRE DEPARTMENT: NEGLIGENCE. A city is not liable at common law for the negligent acts of the members of its fire department.

2. ———: ——— : ———: CASE STATED. Plaintiff's intestate was struck and killed by a ladder wagon or truck belonging to the fire department of the defendant city, through the negligence of the driver thereof, a member of said department, while driving along one of the streets of the city for the purpose of exercising a team of horses belonging to the department. *Held*, That the city is not liable.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Chas. O. Whedon,* for plaintiff in error:

Liability of a city for the acts of its employes "is based upon the right which the employer has to select his servants, to discharge them if not competent, and to direct them while in his employ." (*Kelly v. New York,* 11 N. Y., 432.) It is the duty of a municipal corporation to keep its streets in a reasonably safe condition for public use (*Lincoln v. Walker,* 18 Neb., 251; *Same v. Gillilan,* Id., 119; *Same v. Holmes,* 20 Id., 39; *Same v. Woodward,* 19 Id., 259; *Plattsmouth v. Mitchell,* 20 Id., 230; *Hutson v. New York,* 9 N. Y., 163; *Todd v. Troy,* 61 Id., 506; *Clemence v. Auburn,* 66 Id., 334; *Evans v. Utica,* 69 Id., 166; *Niven v. Rochester,* 76 Id., 619; *Weed v. Ballston,* Id., 329; *Saulsbury v. Ithaca,* 94 Id., 27; *Dewire v. Bailey,* 131 Mass., 169), and the agents of the corporation are bound to exercise an active vigilance in the performance of that duty. (*Todd v. Troy,* 61 N. Y., 506; *Atlanta v. Perdue,* 53 Ga., 607; *Rosenberg v. Des Moines,* 41 Ia., 415; *Chicago v. Hoy,* 75 Ill., 530; *New York v. Bailey,* 2 Denio [N. Y.], 433.) One of the duties of a municipal corporation is to use reasonable care in the conduct of any work which it undertakes. (*Chicago v. O'Brennan,* 65 Ill., 160; *Chicago v. Turner,* 80 Id., 419; *Freeport v. Isbell,* 83 Id., 440.) When the city has the appointment and supervision of the employes, and the duty to be performed is for its benefit, it is liable for their negligent acts. (*New York v. Bailey,* 2 Denio [N. Y.], 433; *Tormey v. New York,* 12 Hun [N. Y.], 542; *Walsh v. New York,* 41 Id., 299.) So where the duty is imposed on the city and the officers or departments are simply made by the charter agents of the corporation. (*Martin v. Brooklyn,* 1 Hill [N. Y.], 545; *Niven v. Rochester,* 76 N. Y., 619; *Barnes v. Dist. of Col.,* 91 U. S., 540; *Ehrgott v. New York,* 96 N. Y., 264; *Groves v. Rochester,* 39 Hun [N. Y.], 5. The municipal corporation is as much subject

as a private citizen to the usual rule, *sic utere tuo ut alienum non lædas*. (*Goodloe v. Cincinnati*, 4 O., 513; *Rhodes v. Cleveland*, 10 Id., 160; *McCombs v. Town Council*, 15 Id., 479.)

*E. P. Holmes, contra:*

It is the uniform rule, as established by a long line of decisions, that there is no liability on the part of a municipality for injuries occasioned by the negligent act of members of its fire department. (Dillon, Mun. Corp., sec. 976; *Grube v. St. Paul*, 34 Minn., 402; *Fisher v. Boston*, 104 Mass., 94; *Wilcox v. Chicago*, 107 Ill., 334; *Greenwood v. Louisville*, 13 Bush [Ky.], 226; *Wheeler v. Cincinnati*, 19 O. St., 19; *Hayes v. Oshkosh*, 38 Wis., 314; *Condict v. Jersey City*, 46 N. J. Law, 157; *Hafford v. New Bedford*, 16 Gray [Mass.], 297; *Jewett v. New Haven*, 38 Conn., 368; *Hurford v. Omaha*, 4 Neb., 336; *Veazie v. China*, 50 Me., 526; *N. Y. v. Furze*, 3 Hill [N. Y.], 612; *Barney v. Lowell*, 98 Mass., 570; *Van Horn v. Des Moines*, 63 Ia., 447; *Ogg v. Lansing*, 35 Id., 495; *Yule v. New Orleans*, 25 La Ann., 394.)

POST, J.

This case comes into this court on a petition in error. The error assigned is the sustaining of a demurrer by the district court of Lancaster county to the petition of plaintiff in error, the material part of which is as follows:

"That on and prior to the 29th day of May, 1889, the said defendant had an organized and paid fire department, and had and owned engines, hose, hose carts, ladders, wagons, trucks, and other apparatus for the use by, and which was used by, said defendant in its fire department in extinguishing fires.

"That said defendant then had and owned horses which were used by said defendant in drawing said wagons, trucks, hose carts, and engines to the place in said city where a

fire might be burning, and for other purposes; that among other apparatus the said defendant then owned a large truck, or wagon, upwards of twenty feet in length, which was used by the defendant in transporting about the city long ladders used by said fire department.

"That said defendant, at the time of committing of the wrongs hereinafter mentioned, had in its pay and employ one Peter Keykendall, who was under the direction and control of the defendant, and whose duty it was, under the direction of said defendant, to drive the team attached to said ladder truck, or wagon, about the city; and said wagon was not at the time hereinbefore mentioned, May 29, 1889, supplied with any brake or lock, or other appliance, for stopping said wagon when in motion, or to assist the horses to said wagon attached in stopping the same; that the distance between the front and hind wheels to said truck or wagon was about eighteen feet; that said wagon or truck, when loaded with ladders and other apparatus, carried thereon, and with the driver thereon, weighed upwards of two thousand pounds.

"That Ninth street extends through said city from north to south and intersects and crosses P, R, and S streets in said city, and said Ninth street and said P, R, and S streets have for many years last past been public streets in said city, and on said 29th day of May, 1889, said Ninth street was paved with wood, and between S and P streets was a paved and smooth street, and from S to R street had a smooth and level surface and was free from obstruction and was paved with wood.

"That the said Peter Keykendall, under his employment, was by the defendant required to drive said ladder truck or wagon about the city, when no fires were burning which required to be extinguished by said defendant or said fire department, for the purpose of exercising the horses to said wagon attached, and was also required to drive said horses attached to said wagon when the same was heavily loaded,

on and along the public streets of the said city at a furious rate of speed and as fast as said horses could be made to run, without any regard whatever for the lives or safety of citizens of the city who might be upon the streets, and this when no fire or fires were burning which required the action of the defendant or its fire department to extinguish, for the sole and only purpose of exercising said horses.

"That on the 29th day of May, 1889, the said Peter Keykendall, then being in the employ of the defendant and acting under the orders and direction of the defendant, drove a span of large, high-spirited, and powerful horses, attached to said ladder truck or wagon, about the public streets of said city for the purpose of exercising said horses. Said wagon or truck was loaded with ladders and other apparatus and the driver rode thereon, and said wagon with its load weighed upwards of two thousand pounds; that said wagon was not on said day supplied with any lock or brake or other appliances for stopping or assisting in stopping said wagon when in motion, as the defendant then well knew.

"That said Keykendall on said day drove said span of horses to said wagon attached as aforesaid on and along said Ninth street at a furious and dangerous rate of speed and as fast as said horses could be driven, when there was no fire burning which required the services of said fire department or any of its members or employes of said city to extinguish, but said horses were driven for exercise only; that Clark D. Gillespie, an infant of tender years, being then but six years of age, was at the time crossing said Ninth street near the place where said street intersects and crosses R street at the north side of said R street, and said span of horses were driven upon said Clark D. Gillespie and he was thrown upon the pavement and the front wheel of said wagon was driven over and across his body; that said boy, after being knocked down and run over by said horses and by one of the front wheels of said wagon, raised

his head and attempted to rise from the pavement when he was struck and run over by one of the hind wheels of said truck or wagon and was instantly killed. That the killing of said boy was caused by the driving over him of said team and wagon as aforesaid.

"Plaintiff further says that at said time said team and wagon was not being driven to any fire which required to be extinguished, but was being driven on and along said street for the sole and only purpose of exercising said horses under the direction and orders of the defendant at a dangerous rate of speed, and were driven so fast that it was impossible for the said Clark D. Gillespie to escape being run over. That the said Clark D. Gillespie was the son of the plaintiff.

"That on the 22d of July, 1889, the plaintiff was by the county court of said Lancaster county duly appointed administrator of the estate of said Clark D. Gillespie, and gave the bond by said court required and took the oath by law required in such cases.

"That on or about the 22d of July, 1889, plaintiff presented to the city council his claim for damages sustained by the estate of said Clark D. Gillespie by reason of the killing of him, the said Clark D. Gillespie, together with the names of the witnesses and a statement of the time, place, nature, circumstances, and cause of the injury and damages complained of, which claim was verified by the oath of the plaintiff; that afterwards, and on or about the 12th of August, 1889, said claim was by the defendant and the mayor and council thereof, to which it was presented as aforesaid, rejected and disallowed.

"That by reason of the killing of said Clark D. Gillespie as aforesaid the estate of the deceased has sustained damages in the sum of $5,000, for which sum plaintiff prays judgment with interest from the 12th of August, 1889, and for costs."

The contention of the defendant in error is that no lia-

bility exists on the part of a city like Lincoln for injuries occasioned by the negligent acts of members of its fire department. This exemption is placed upon the ground that in performing their duties, firemen act in obedience to a legislative command, and although appointed and paid by the city they are to be regarded rather as officers charged with a public duty, than as servants of the city. Public policy, it is claimed, forbids the imposition upon a city of liability for the negligence of this class of employes, since they are engaged in the discharge of a duty imposed by law for the welfare of the public, and from which the city, as a corporation, derives no benefit or advantage. Counsel for plaintiff in error, while not conceding the rule to be as stated, insists that it could have no application to the case at bar for the reason that the statute under which the fire department of the city of Lincoln is organized and governed is permissive only, and whatever is done by the city in that respect it does voluntarily, and therefore the rule *respondeat superior* is applicable. To this proposition we cannot consent. The provision on the subject is found in subdivision XXXIII, section 67, of the charter of the city of Lincoln: " Cities governed under the provisions of this act shall have power by ordinance to provide for the organization of a fire department, to procure fire engines, hooks, ladders, buckets, and other apparatus, and to organize fire engine, hook and ladder, and bucket companies, and to prescribe rules of duty and the government thereof, with such penalties as the council may deem proper, not exceeding one hundred dollars, and to make the necessary appropriations therefor, and to establish regulations for the protection from and the extinguishment of fires." This language, although permissive in form, is in one sense mandatory. True it is not mandatory in the fullest sense of the word, since the duty of the city to provide protection to life and property from fire cannot be enforced by *mandamus* or other remedy. It is not every duty imposed upon the state

or the different agencies thereof called municipal corpora-
tions that can be thus enforced. (*Kentucky v. Dennison*, 65
U. S., 66; Dillon on Munic. Corp. [4th Ed.], 98.)   It is
none the less a duty on the part of the city because the law
has not provided a means for its enforcement by the mandate
of the court.   There existed a moral or equitable obligation
on the part of the defendant city to provide means of pro-
tection from fires within its limits, and in the discharge of
that duty provision was made for its fire department.   If
defendant is to answer for the wrongful act of Keykendall,
the driver of the ladder wagon, it must be upon the rule *re-
spondeat superior*.   It is clear that upon no other principle is
it chargeable.   In this connection it should be noted that the
claim is made by plaintiff that Keykendall, in driving the
team at the time in question, was acting within the scope
of his authority.   Counsel says in his brief: "The exer-
cising of the team was a proper thing to do.   It lies in the
way of a proper discharge of the functions of the depart-
ment.   It was not *ultra vires*.   The way in which it was
performed is what we complain of."   Taking it for granted,
then, that the driving of the team at the time in question
was a proper exercise of the functions of the fire depart-
ment of the city, and within the line of duty of the driver,
we will proceed to examine some of the authorities bearing
upon the question involved.

   In Dillon on Munic. Corp. [4th Ed.], 974, the rule is
stated thus: "If the corporation appoints or elects them,
can control them in the discharge of their duties, can con-
tinue or remove them, can hold them responsible for the
manner in which they discharge their trust, and if those
duties relate to the exercise of corporative powers, and are
for the peculiar benefit of the corporation in its local or
special interest, they may justly be regarded as its agents
or servants, and the maxim of *respondeat superior* applies.
But if, on the other hand, they are elected or appointed by
the corporation, in obedience to the statute, to perform a

public service, not peculiarly local or corporate, but because
this mode of selection has been deemed expedient by the
legislature in the distribution of the powers of the govern-
ment, if they are independent of the corporation as to the
tenure of their office and the manner of discharging their
duties, they are not to be regarded as the servants or agents
of the corporation, for whose acts or negligence it is im-
pliedly liable, but as public or state officers with such
powers and duties as the statute confers upon them, and
the doctrine of *respondeat superior* is not applicable."

Among the officers who are not servants of a city within
the foregoing rule, and for whose negligence it will not be
chargeable, the learned author enumerates policemen, health
officers, and firemen.   The rule as to the liability of the
latter the author states in section 976, as follows: "The
exemption from liability in these and the like cases is upon
the ground that the service is performed by the corporation
in obedience to an act of the legislature; is one in which
the corporation, as such, has no particular interest, and from
which it derives no special benefit in its corporate capacity;
that the members of the fire department, although appointed,
employed, and paid by the city corporation, are not the
agents and servants of the city, for whose conduct it is
liable, but they act rather as officers of the city, charged
with a public service, for whose negligence in the discharge
of official duty no action lies against the city.   Without
being expressly given the maxim of *respondeat superior* has
therefore no application."   To the same effect see 2 Thomp-
son on Neg., 735; Sherm. & Redfield on Neg., 295, 296.

*Hayes v. The City of Oshkosh*, 33 Wis., 314, was an
action to recover damages resulting from a fire occasioned
by the negligent use of an engine employed in suppressing
a fire in the neighborhood.   Chief Justice Dixon, in the
opinion, says: "Neither the charter of the city nor the
general statutes of the state contain any peculiar provision
imposing liability in cases of this kind, and the decisions

elsewhere are numerous and uniform that no such liability exists."

*Wilcox v. City of Chicago,* 107 Ill., 334, is directly in point. In that case the plaintiff sought to recover for injuries occasioned by a collision between his carriage and a hook and ladder wagon of the city, through the negligence of the driver while in the discharge of his duty. In the opinion of the court, by Judge Walker, it is said: "To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great if not greater burdens than are suffered from damage by fire. Sound public policy would forbid it, if it were not prohibited by authority."

In *Fisher v. City of Boston,* 104 Mass., 94, the plaintiff received personal injuries through the negligent use of hose by a fire company of the city in extinguishing a fire on adjoining premises. Judge Gray, in the opinion of the court, says: "But the extinguishment of fires is not for the immediate advantage of the town in its corporate capacity, nor is any part of the expense thereof authorized to be assessed upon owners of buildings or other special class of persons whose property is peculiarly benefited or protected thereby. In the absence of express statute, therefore, municipal corporations are no more liable to actions for injuries occasioned by reason of negligence in using or keeping in repair the fire engines owned by them than in the case of a town or highway."

In *Hafford v. New Bedford,* 16 Gray [N. Y.], 297, the plaintiff was struck and injured by a hose cart on a sidewalk of a public street. The fireman in charge thereof had negligently drawn it along and upon the sidewalk from the engine house ten or fifteen rods distant. The city was held not liable.

In *Jewett v. New Haven,* 38 Conn., 368, the plaintiff, without negligence on his part, was struck and injured in a public street by a hose cart which was being driven to

the engine house for an additional supply of hose for use at a fire then raging, but at a dangerous rate of speed and without the exercise of reasonable precaution for the safety of passers-by. It was held the rule *respondeat superior* did not apply and the city was not chargeable.

In *Dodge v. Granger*, Sup. Ct. R. I., 24 Atl. Rep., 100, a very recent case, on the authority of cases above cited, the city was held not liable for injuries caused by contact with a ladder projecting across the sidewalk in front of an engine house negligently permitted by the firemen to remain in that position while engaged in cleaning the house. This principle has been repeatedly applied to other officers or employes of municipal corporations, as in *Maxmilian v. Mayor*, 62 N. Y., 160, where plaintiff's intestate was killed by a collision with an ambulance wagon, which was caused by the negligence of the driver, an employe of the commissioners of public charities and corrections; *Haight v. New York*, 24 Fed. Rep., 93, where, following the last case, it is held that the city is not liable for damage caused by a collision with a steamboat owned by the city, but in the exclusive use of the board of charities and corrections; *Condict v. Jersey City*, 46 N. J. Law, 157, where the deceased was killed through the negligence of a driver employed by the board of public works to remove garbage from the streets to a public dumping ground; *Calwell v. City of Boone*, 51 Ia., 687, where the injury resulted from the wrongful act of a policeman paid by the city; *Ogg v. City of Lansing*, 35 Ia., 495; *Brown v. Vinalhaven*, 65 Me., 402, and *Barbour v. Ellsworth*, 67 Id., 294, in each of which it was held that the city was not chargeable with the negligence of its health officers; *Burrill v. Augusta*, 78 Me., 118, in which plaintiff's horse was frightened by the escape of steam from a fire engine negligently allowed to remain in the street; *Elliott v. Philadelphia*, 75 Pa. St., 347, where plaintiff's horse was killed through the negligence of a police officer by whom he had been arrested for violation of an

ordinance of the city against fast driving; *Bryant v. St. Paul,* 33 Minn., 289, where the plaintiff fell into a vault negligently left open and exposed by the board of health. In the last case the distinction between the class of officers above mentioned and other agents of the city is clearly pointed out by Vanderburg, judge, as follows: "The duties of such officers are not municipal or corporate duties with which the corporation is charged in consideration of charter privileges, but are police or governmental functions which could be discharged equally well through agents appointed by the state, though usually associated with and appointed by the municipal body."

There are many cases in the reports of the states and the United States in harmony with the foregoing, among which are *Smith v. Rochester,* 76 N. Y., 506; *Van Horn v. Des Moines,* 63 Ia., 447; *O'Meara v. New York,* 1 Daly [N. Y.], 425; *Wheeler v. Cincinnati,* 19 O. St., 19; *Howard v. San Francisco,* 51 Cal., 52; *Ham v. Mayor,* 70 N. Y., 459; *Welsh v. Rutland,* 56 Vt., 228.

The cases cited by plaintiff may be said to sustain the proposition that the law imposes upon a city the duty to keep its streets in a reasonably safe condition for use by the public, and for a neglect of that duty it will be answerable. They are plainly distinguishable from those to which we have referred, since the duty of the city with reference to its streets is a corporate duty. As said by Judge Folger in *Maxmilian v. Mayor, supra:* "It is a duty with which the city is charged for its own corporate benefit to be performed by its own agents as its own corporate act." This distinction is made also in *Ehrgott v. Mayor,* 96 N. Y., 274, one of the cases cited by plaintiff. To the extent that the exemption of a city from liability for acts of officers herein enumerated affects the general rule of liability for obstruction of the streets of the city it must be held to be an exception thereto—an exception based upon a public policy which subordinates mere private interests

to the welfare of the general public. The judgment is right and is

AFFIRMED.

THE other judges concur.