694        NEBRASKA REPORTS.        [VOL. 112

State, ex rel. Metropolitan Utilities District, v. City of Omaha.

---

STATE, EX REL. METROPOLITAN UTILITIES DISTRICT ET AL., APPELLEES, V. CITY OF OMAHA ET AL., APPELLANTS.

FILED NOVEMBER 20, 1924.     No. 23745.

Municipal Corporations: CONSTITUTIONAL LAW. The provision of section 16, ch. 33, Laws 1919 (Comp. St. 1922, sec. 3761), imposing upon municipal corporations the obligation to levy a tax to pay

State, ex rel. Metropolitan Utilities District, v. City of Omaha.

hydrant rentals, is not violative of section 7, art. VIII of the Constitution, providing: . "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes."

APPEAL from the district court for Douglas county: WILLIAM G. HASTINGS, JUDGE. *Affirmed.*

*W. C. Lambert,* for appellants.

*John L. Webster, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is a mandamus proceeding, instituted by Metropolitan Utilities District, as relator, to compel the respondents, the city of Omaha and the city council of said city, to levy a hydrant rental water tax against the taxable property within the city of Omaha, Nebraska. which relator claims is a statutory obligation resting upon respondents. R. B. Howell intervened as a corelator and demanded the same relief, basing his individual demand upon the additional ground that he was the owner and holder of one of the water-bonds that were issued by said city when it purchased and took over the water-plant. Respondents filed a return, and the cause was submitted to the court upon the pleadings, and a writ issued as prayed by relators. Respondents appeal.

Relator, Metropolitan Utilities District, is a corporation created under the laws of the state and, as such, it has succeeded to the rights, powers and duties of the original water-board and of the Metropolitan Water District, and is now in possession of and engaged in the operation of the water-plant of the respondent city. In 1911 the city of Omaha purchased and took over the water-works plant of the Omaha Water Company, and issued bonds in the amount of $7,500,000 to pay for the same. Each of the bonds so issued, on its face, purports to be an unconditional obliga-

tion of the city, and the faith and credit and the real and personal property of the city are pledged for the payment of the principal and interest of the bonds. Each bond contains the further recital:

"The city of Omaha hereby obligates itself to each and every holder of this bond and of the coupons hereof that the water-board of the city of Omaha and its successors, after the payment of the actual and necessary expenses of operation and such improvements as are necessary to maintain the efficiency of said water-works, shall apply the water fund of said city (*including therein the water tax* and the revenue from water-services and rates to consumers) to the payment of interest on this issue of Omaha water-works bonds of said city, and shall set aside at the end of each year all moneys remaining in said fund, as a sinking fund for the payment of the principal and interest of this bond and of the issue of which this bond forms a part; *and that the said city shall levy such taxes* as may be necessary in addition thereto for the payment of the principal and interest of this bond as the same respectively become payable."

In 1912 the city of Omaha took possession of the water-plant and continued the operation thereof until succeeded by the Metropolitan Water District, which latter-named district retained possession and continued in operation of the system until succeeded by relator, Metropolitan Utilities District, now in possession of and operating the plant. In the original franchise, granted to the Omaha Water Company, and in the contract pursuant thereto by and between the city and the water company, it was provided that the city would pay annually $60 for each hydrant and $10 per annum for each intermediate hydrant, and would levy a tax to meet such payment. In the legislative act, creating the Metropolitan Water District, which was enacted in 1913 (Laws 1913, ch. 143), as amended in 1919 (Laws 1919, ch. 33, sec. 16; Comp. St. 1922, sec. 3761), it is provided that the water fund of the district should consist of all moneys received on account of the water-plant for water-service or

otherwise, together with a water tax to be levied by the municipal authorities, the amount to be certified to the municipal authorities, by the board of directors of the district in time for annual levy of taxes each year, which amount shall not exceed the sum produced by computing each fire hydrant, now or hereafter installed, at the following rates for each hydrant: Regular fire hydrant $60, intermediate $10; the gross amount of the tax not to exceed a three-mill levy; and it is made mandatory upon the municipal authorities to levy such tax. It is further provided that the fund, together with interest received, shall be used for the purpose of paying interest or principal on the bonds issued by the district or city, the cost of operation, maintenance and extension or improvements of the water-plant, salary and expenses, and, after allowing a reasonable amount for depreciation, the remainder in said fund at the end of each year shall be converted into a contingent fund for the payment of water-bonds outstanding, or for extraordinary improvements which may be needed from time to time in the conduct and maintenance of the water-plant.

Respondents admit the creation of the Metropolit- Utilities District, and that it is in control of and operating the water-plant; admits the issuance of the bonds, and that a considerable part of the issue is outstanding; that they contain the recitals above set forth and show that the pledges of the city have been faithfully kept; that nothing is now due and payable on either principal or interest of the bonds; that the amount existing in the sinking fund is $500,000 in excess of the requirements and is and will be sufficient to meet all present needs. The respondents, among other defenses, urge that the legislative act, imposing upon the city the obligation to levy a water tax, violates section 7, art. VIII of the Constitution, and is therefore unenforceable. The section of the Constitution referred to provides:

"Private property shall not be liable to be taken or sold for the payment of the corporate debts of municipal cor-

698                NEBRASKA REPORTS.          [Vol. 112

State, ex rel. Metropolitan Utilities District, v. City of Omaha.

porations. The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes."

That the construction, operation or maintenance of a water-plant by a municipal corporation is not an exercise of governmental functions, but is in the nature of a private enterprise for the convenience, advantage or benefit of the municipality, its inhabitants and property owners, and that the phrase " for corporate purposes," as used in section 7, art. VIII of the Constitution, is limited to those municipal activities designed, in the main, for the principal or exclusive convenience or benefit of the municipality, its inhabitants or property owners, was held by this court in *Metropolitan Utilities District v. City of Omaha, ante,* p. 93. It was further held in that case that a statute which imposes upon a municipal corporation the burden of paying the cost of lowering gas and watermains, when operated by another corporation, is in contravention of section 7, art. VIII of the Constitution.

In the instant case, the statute imposes on a municipality the duty of levying an annual tax equal to $60 for each fire hydrant and $10 for each intermediate hydrant, to become a part of the water fund, to be used for the purposes above set forth.

It is contended by the relators that the statute in question merely empowers the municipality to levy hydrant rentals, but we think no discretion is lodged with the city in that respect. The statute is mandatory in terms requiring the levy of the tax, and while the proceedings necessary to the imposition of the tax are instituted and carried on by the municipality, the obligation to pay the hydrant rentals is imposed directly by the legislature, and we held in *Metropolitan Utilities District v. City of Omaha, supra,* that in the construction and application of the constitutional provision in question the imposition of an obligation upon a municipality which can only be discharged by taxation is equally within the prohibition as though the legislature had levied the tax directly. We may assume, therefore,

that the tax in question is levied by the legislature, and the question is squarely presented whether or not it is a tax for corporate purposes within the meaning of those terms as contained in the prohibition of the Constitution.

The dual nature of powers exercised by municipal corporations is too well established, not only in this state but elsewhere, to call for discussion. First, are those which it exercises as the agent of the state, and which are delegated to it by the legislature under the Constitution. Without such delegation those powers would not exist. The exercise of them involves the municipality in pecuniary obligations which can only be satisfied by taxation. Such powers are not exercised for corporate purposes, but for governmental purposes as an agent of the state, and for the general welfare of all the people of the state, notwithstanding the fact that they have no operation beyond the boundaries of the city. But within such boundaries and to the extent that power has been delegated they are of equal force with laws passed by the legislature, and operate alike upon all persons within the city, whether resident thereof or of other states or other countries. Second, are those powers which the municipality exercises solely and strictly for the benefit of its inhabitants, such as the proper care of streets and alleys, parks and other public places, and in the erection and maintenance of public utilities and improvements generally. While the terms "corporate purposes" are quite general and in a popular sense might be considered to include all the ends for the accomplishment of which municipal corporations are created, to give them such interpretation would disregard the well-established distinction above pointed out between the different functions performed by the municipality for the sole benefit of its inhabitants and those performed as an agency of the state in the exercise of police powers. The words themselves imply a limitation upon their application; they would seem to include only such purposes as were to be carried out for the benefit of the corporation and its inhabitants, and not those in the accomplishment of which the people of the

700          NEBRASKA REPORTS.          [VOL. 112

State, ex rel. Metropolitan Utilities District, v. City of Omaha.

entire state are interested. To give them the broad signifi-
cance contended for by respondent would in effect deprive
the state of all exercise of its police power within the city
boundaries. This cannot have been the intention of the
framers of the Constitution, because it is elementary that
all the police power is vested in the state government, and
it may not abdicate such power, although it may delegate
the exercise of it to municipal corporations within their
borders; but they may not delegate it irrevocably, and the
municipality acts only as the agent of the state and its
powers may be controlled or revoked by the authority which
delegated them. That the terms were used in a restrictive
sense seems further evident from the fact that, if total pro-
hibition had been intended, such purpose would have been
clearly expressed in the terms: "The legislature shall not
impose taxes upon municipal corporations, or the inhabi-
tants or property thereof, for any purpose." They have
used more restrictive terms, and they readopted the same
provision from the Constitution of 1875 after the same had
been several times construed by this court as no inhibition
upon the exercise of power by the legislature imposing bur-
dens upon municipal corporations connected with the per-
formance of their governmental functions as an agency of
the state. But, aside from this consideration, as already
suggested, the word "corporate" implies something con-
nected with the interests of the municipality itself as dis-
tinguished from those wider interests which it has in com-
mon with all inhabitants of the state in the enforcement
of laws for the general welfare of the people as a whole—
laws which are referable to the police power or the general
policy of the state.

The inquiry then recurs, whether or not the tax in ques-
tion is required to be levied for a corporate purpose, or
whether it has relation to the exercise of the governmental
power of the state through the agency of the municipal
corporation.

We held in *Gillespie v. City of Lincoln*, 35 Neb. 34, and
*State v. Love*, 89 Neb. 149, that a municipal corporation in

furnishing and operating a fire department is in the performance of a governmental function as distinguished from a corporate function, and it is said in 28 Cyc. 267, under "Governmental Functions:" "This class of functions (including maintaining and operating a fire department) are not franchises, or privileges, to be exercised or ignored by the municipality at discretion, but rather legal duties imposed by the state upon its creature, which it may not omit with impunity but must perform at its peril." (Citing a number of cases in notes 30 and 31.)   The location and maintenance of hydrants in the city streets and supplying them with water are directly connected with the performance of this governmental function.   The primary purpose of such hydrants is for fire protection, and secondarily, or perhaps of equal importance, for the flushing of sewers and cleaning of streets.   All these operations are carried on for the public welfare and safety, are for the protection of the health and safety of the public, and find their authority in the general police power of the state which has been in part delegated to the municipality.

We think that the principles announced in the case of *State v. Love*, 89 Neb. 149, control the decision of this case. That was an action for a mandamus to compel the officers of the city of Lincoln to place the plaintiff upon the retired list of firemen in said city and pay him a pension of $50 a month, in accordance with a statute (Laws 1895, ch. 39) requiring the payment of such pensions, and the defense was that the statute was unconstitutional as imposing taxes upon a municipal corporation for a corporate purpose. But we held, citing *Gillespie v. City of Lincoln*, 35 Neb. 34: "That firemen should be placed in the same classification as policemen and health officers; that they are public or state officers vested with such powers as the statute confers, and that the duties they perform do not relate to the corporate functions of the municipality." We further said: "*Gillespie v. City of Lincoln, supra*, has not been criticised or in any manner discredited by this court, and must be held to state the correct general principle of law.   In sus-

taining the right of the legislature to authorize the governor to select commissioners who shall appoint and control members of the police force and of the fire department in metropolitan cities, the functions of firemen are recognized as governmental rather than proprietary. *Redell v. Moores*, 63 Neb. 219. So, therefore, while the city of Lincoln has the right, and in its charter is given specific authority, to assemble appliances for the extinguishment of fires, to employ firemen, and to levy and collect taxes to pay the expense of the fire department, and while that purpose is a public one, it is not a corporate purpose within the prohibition in section 7, art. IX of the Constitution."

This settles the question that the maintaining of a fire department is not for the accomplishment of a corporate purpose but for a governmental purpose, and is a public duty the performance of which the state may compel although it results in taxation of the inhabitants of the city. The most common method of extinguishing fires is by pouring water upon the flames, and that is one of the public duties of the city to prevent conflagrations. It is incumbent upon it to provide the means for the accomplishment of that purpose, which includes, procuring a supply of water whether by means of wells and pumps in communities not supplied by water-works, or through hydrants where they are so supplied. We have no doubt but that the state may compel the performance of this duty and require the expense connected therewith to be paid by taxation.

Our conclusions are sustained by the decisions of other states. In *City of Chicago v. Manhattan Cement Co.*, 178 Ill. 372, 381, a statute imposing a liability upon a municipal corporation for damages caused by a mob was held not within a similar constitutional provision of the state of Illinois, the court holding that the liability so imposed was not merely and only for corporate purposes, and that the general assembly may compel taxation by a municipal corporation for performance of duties as an agency of the state government and to discharge duties and obligations resting upon it as such.

In *Peovle v. County of Williamson,* 286 Ill. 44, it was held: "The general assembly may compel a municipal corporation to perform any duty which relates to the general welfare and security of the state, although the performance of such duty will result in taxation or create a debt to be paid by taxation."

In *Chicago, M. & St. P. R. Co. v. County of Lake,* 287 Ill. 337, it was held that an act requiring the municipality to make a change of grade and bear the expense thereof at a railway crossing was not for *corporate* governmental purposes and therefore not prohibited by the constitutional provision.

These cases are discussed in *Metropolitan Utilities District v. City of Omaha, ante,* p. 93, and distinguished therefrom on the principle announced herein, that the constitutional provision under discussion has no application to the exercise by the state of the police power.

In *Gooch v. Exeter,* 70 N. H. 413, it was held that an act fixing the salaries of police officers and one delegating such authority to the board of police commissioners, such salaries to be paid out of municipal funds, was not unconstitutional as being an expenditure for municipal purposes.

The case at bar is clearly distinguishable from *Metropolitan Utilities District v. City of Omaha, ante,* p. 93. In that case another provision (section 3760) of the same act we have been discussing was under consideration, whereby it was sought to charge the city with the expense of lowering water-mains and resetting hydrants whenever necessary, and we held that part of the act within the prohibition of section 7, art. VIII of the Constitution, upon the principle, as announced in the second syllabus:

"The construction, operation or maintenance of water and gas plants by municipal corporations is not an exercise of governmental functions, but is rather in the nature of a private enterprise for the convenience, advantage or benefit of the municipality, its inhabitants and property owners."

It seems clear that the lowering of water mains and

704 . NEBRASKA REPORTS. [Vol. 112

State, ex rel. Metropolitan Utilities District, v. City of Omaha.

resetting of hydrants is a part of the construction, operation and maintenance of a water-works system, and that, if the providing of such system was a private enterprise merely for the benefit of the municipality and its inhabitants, a tax levied for the maintenance of such system would be for a corporate purpose and clearly within the prohibition of the Constitution. We also held in that case:

"The phrase 'for corporate purposes' as used in section 7, art. VIII of the Constitution, is limited to those municipal activities designed, in the main, for the principal or exclusive convenience or benefit of the municipality, its inhabitants or property owners."

On the other hand, in the instant case, while the fund raised by taxes imposed for hydrant rentals goes into the general treasury of the Utilities District and subject to its control, and may be used in payment of the expenses of construction and maintenance of the water-works, yet that is not the purpose underlying the imposition of the tax, but it is rather to require and enable the city to perform a governmental function as an agent of the state in the exercise of the police power. In no sense can the payment of hydrant rentals be construed as a contribution to the construction and maintenance of the water-works, any more than the payment of a rental for a building may be looked upon as a contribution to the support of the owner; in both cases the payment is made for a consideration beneficial to the party paying who has no interest in the disposition of the fund.

The statute in question recognizes the injustice of requiring water consumers, through the imposition of rates, to bear the public expense consequent upon the furnishing of water for extinguishing fires, and places the burden upon all taxable property in the city, thus requiring all to contribute for the public welfare; this is not only logical, but in consonance with principles of justice.

We conclude that the provision of the statute requiring the levy of a tax to pay hydrant rentals is not violative of section 7, art. VIII of the Constitution, and that the judg-

ment of the district court is right and should be affirmed.

AFFIRMED.

GOOD, J., dissenting.

I am unable to concur in the majority opinion in so far as it holds that the water tax, mentioned in the statute, is imposed for a governmental rather than for a corporate purpose. The statute requires the tax to be placed in and become a part of the water fund, and further provides the purposes for which the water fund may be expended, viz., for the payment of interest or principal of any water bonds issued for the cost of the plant; cost of operation, maintenance and extension or improvement of the water plant; salaries and expenses of the officers and employees of the Metropolitan Water District; for the payment of bonds that have been previously issued or to be hereafter issued, or for extraordinary improvements. It seems plain that the tax is imposed for the purpose of paying for, maintaining and operating a water plant, and that such an enterprise is, in its nature, a private business for the convenience, advantage or benefit of the municipality, its inhabitants and property owners.

The construction, operation or maintenance of water plants by a municipal corporation has been held by this court not to be an exercise of a governmental function, but in the nature of a private enterprise, and to be for a corporate purpose, within the meaning of section 7, art. VIII of the Constitution. *Metropolitan Utilities District v. City of Omaha, ante,* p. 93. Authorities are therein cited sustaining the proposition, and I think are in conformity with the overwhelming weight of authority. It may be observed that counsel for both relator and respondents in this case concede that the construction, operation and maintenance of water plants by a municipality is a private enterprise and is not the exercise of a governmental function. Relator, however, insists and argues in this case, as was done in the case of *Metropolitan Utilities District v. City of Omaha, supra,* that the phrase "for corporate purposes,"

as used in section 7, art. VIII, of the Constitution, had reference to municipal or governmental activities and functions and did not relate to those that were in the nature of a private business enterprise. This contention of relator was disapproved in the case heretofore cited. The majority opinion seems to be based largely on the rulings of this cou⁀, in *Gillespie v. City of Lincoln*, 35 Neb. 34; *Redell v. Moores*, 63 Neb. 219; and *State v. Love*, 89 Neb. 149. The *Gillespie* case goes no further than to hold that the maintaining of a fire department by a city is an exercise of the police power and, in effect, is governmental in its nature. The *Redell* case does not seem to be in point. The *Love* case, in substance and effect, holds that the maintaining of a fire department by a municipality is the exercise of a governmental function, rather than a private or corporate purpose. I have no quarrel with the rulings in these cases, but it seems to me that it is a *non sequitur* to hold that, because the maintaining of a fire department is a governmental function, the construction, maintenance and operation of a water plant is of like character. It is true that water is one of the chief factors in the extinguishment of fires, but so are proper fire apparatus, hose, nozzles, ladders, trucks, etc. Suppose a municipality should be authorized to and did establish and maintain a plant for the manufacture of such fire apparatus as it should need, could it, with reason, be said that in so doing it was exercising a governmental function? It seems to me that the question suggests the answer. A municipality may purchase its fire apparatus in the open market. It may also engage a private person or corporation to furnish a supply of water for fire protection, or may authorize a private person or corporation to construct and operate a water plant. It seems to the writer that the statute in question imposes a tax for corporate purposes, within the meaning of section 7, art. VIII of the Constitution, and is therefore invalid.

I think that the statement in the syllabus of the majority opinion is misleading in that it assumes that the tax is levied to pay hydrant rentals. An examination of the

statute shows that the tax is not levied for the payment of hydrant rentals but to pay for and maintain a water plant. It is true that the amount of the tax is measured by the number of hydrants and is also limited to a three-mill levy, but this is simply a measure or limitation of the amount of the tax.  The purpose for which the tax is levied must be determined by the use which the statute directs shall be made of the fund arising from its levy and collection.

I think the writ should have been denied and the action dismissed.