L. H. JONES, Administrator, Appellant, v. CITY OF SIOUX CITY, Appellee.

**EVIDENCE:** Allegation of Governmental Capacity. A municipality

1  which pleads that its officers, at the time in question, were acting in a governmental capacity, has the burden to so prove.

**MUNICIPAL CORPORATIONS: Non-Governmental Acts.** The act of an employee of the city, while in the course of his employment, in conveying policemen to their beats, in an automobile owned by the city, is not, *in and of itself*, a governmental act. It follows that the city is liable in such case for the proximate negligence of the employee.

**EVIDENCE: Issue on Capacity in Which Employee Acted.** On the issue whether an employee of a city was engaged in a ministerial or a governmental capacity, while employing a city-owned automobile to convey policemen to their beats, evidence is admissible that, at prior non-remote times, the said employee had employed said car in a ministerial capacity for the city.

**MUNICIPAL CORPORATIONS: Ministerial and Governmental Negligence.** A city which is proximately negligent in an act which is clearly non-governmental is none the less liable because such negligence became proximate while the city was doing a governmental act.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

JANUARY 17, 1919.

REHEARING DENIED APRIL 14, 1919.

ACTION for damages for the death of plaintiff's intestate. The action was brought against the city and against Ray Callander, an employee of the defendant city, who was driving the automobile at the time. No evidence was introduced on behalf of the defendant city, and, at the conclusion of the plaintiff's evidence, the trial court sustained a motion to direct a verdict in favor of the city. Callander defaulted, and the case was submitted to the jury as to him, and a verdict for $13,000 returned. The plaintiff appeals from the ruling of the court, and the judgment rendered against him for costs. The opinion shows the facts more in detail.—*Reversed.*

*Evans & Evans,* for appellant.

*Schmidt & Pike,* for appellee.

PRESTON, J.—Deceased was struck by an automobile belonging to the city, and driven by its employee, Callander. The petition alleges substantially that the city was negligent, for that the car was being driven at a high, reckless, and negligent rate of speed; that the pavement of the street, at the place where the accident occurred, was in a rough and uneven condition; and that such defective condition of the street was a concurring proximate cause of the injury; and that the collision would not have happened if the street had not been in such defective condition; that the city kept Ray Callander, its employee, as driver of said car, well knowing that he was a careless and reckless driver; that the street was not properly lighted. We do not understand appellant to now rely in this court upon the last two grounds. It may be that the fact that the street was poorly lighted at the point in controversy would have a bearing upon the other grounds of alleged negligence, in operating the car at a high rate of speed over defective paving.

The answer of defendant city denies these allegations, alleges contributory negligence, and, in a second division, pleads affirmatively that, at the time of the collision, the motor car driven by Callander was the police car of said city; that said Callander and the occupants of said car were members of the police department, and were on duty as employees of said department at the time of the collision; that said officers were then acting under orders of their superior police officer at headquarters, and were answering a police call; that said city was acting in a governmental capacity, and performing a governmental duty, as an agent of the state, in enforcing police regulations in said city and state, and is not liable for the acts or alleged wrongs set out in plaintiff's petition. Plaintiff's reply denies that the auto-

mobile was answering a police call, and denies that the city was at that time acting in a governmental capacity, or performing a governmental duty.

The injury occurred on Fourth Street, which runs east and west, and is between Jackson and Nebraska Streets, running north and south. Jackson Street is to the east. There is an alley between these streets. Plaintiff's father has a store on the south side of Fourth Street, and a little east of the alley. There are street car tracks on Fourth Street. The collision occurred about 11 o'clock at night, May 18, 1916. Deceased, an experienced driver, was driving her father's Franklin car, her father in the back seat. Deceased turned into Fourth Street from Jackson, going west on the north side of Fourth Street, and proceeded west until she reached the alley intersection, or perhaps a little west of the alley, when she turned south, intending to head the car east at her father's store, on the south side of Fourth Street, and east of the alley. When she turned south, she went until she reached the south rail of the south street car track. At that time, her father noticed the city automobile coming from the west on Fourth Street, about a block distant, and he told his daughter to stop the car, which she did at once. When her car stopped, the right front wheel was just over the south track, and her car was facing east and south. When she turned south, she was driving at a speed of about 6 or 8 miles an hour. When she went to turn, the street seemed clear; but, as said, the city car was noticed about a block west. The city car was approaching at 45 miles an hour, and did not slow down. It came down the center of the street, and turned to the south, in attempting to pass the Jones car. The city car struck the Jones car on the right-hand side, and the front end of the Jones car was knocked around northeast. Deceased was knocked from the car and instantly killed. The street was poorly lighted, and dark. A witness testifies that the city car gave no signal or

warning that he heard. The pavement on Fourth Street, at the place and immediate locality where the collision occurred, was, at that time, and a long time before, in a rough and uneven condition; the cobblestones next to the street car tracks are higher than the rest of the pavement, and some of them are missing; holes are worn, 3 to 4 inches deep, in places. There was room for the city car to pass between the Jones car and the sidewalk to the south; the distance was 12 or 15 feet from the front end of the Jones car to the south curb of Fourth Street. Appellant contends—and the matter will be referred to later—that, since there was room enough for the city car to have passed the other, and the driver tried to do so, and would have done so had it not been for the defective condition of the street, but, when he attempted to turn across the high cobblestones and the ruts, he momentarily lost control of his car, it was for the jury to say whether there was concurrent negligence on the part of the city, because of the defective condition for which the city would be liable, even though it is not liable for the other causes; and that the trial court overlooked this allegation of the petition. It was shown that the city car was owned and operated by the city, and was driven by Callander, who was an employee of the city. Callander was not a policeman, and was employed to drive this car. It is admitted in the pleadings that Callander was driving the car for the city. It is contended by appellant that the evidence shows that, at the time of the collision, Callander and the city automobile were upon a ministerial mission, and not a governmental one. There is no evidence that the police officers in the city car were answering a police call, as alleged in the answer. The evidence on this subject was drawn out on cross-examination of plaintiff's witnesses. This evidence was put in after defendant had made its motion to direct a verdict, the court indicating that the motion was well taken, and that the burden was on plaintiff to show that the car

was not being used for governmental purposes. The court permitted plaintiff to introduce further testimony, and the motion to direct was then renewed. Briefly, the evidence at this point is that there were uniformed policemen in the city car; on the rear of the car was marked "Police." One of the occupants testified that, at the time of the collision, he was on his way to his beat in the eastern part of the city; that he had answered roll call previously to this; and that he was on duty at the time of the collision. The city car was a six-cylinder, seven-passenger Buick. The record does not show any instance when this car was used as a police car at any other time. The plaintiff offered to prove that, prior to the accident, the city car had been used for ministerial purposes, such as taking members of the council out to inspect work connected with the city, at different times; and that, about May 18, 1916, the day of the accident, Callander took members of the council out to inspect property; and that, in the spring of 1916, Callander took the car in question and delivered the primary ballots to the various voting places in the city, and at other times, took a probation officer and a health officer on trips in regard to the duties of their office. The court ruled the evidence out, on the ground that the material question was, what use the car was being put to at the time of the accident. The motion to direct a verdict was sustained generally, and was on the ground that there was no evidence of negligence as alleged— no negligence in the performance of any duty for the city; that the evidence fails to show that the occupants of the city car were acting in the performance of any duty for the city; that the evidence fails to show affirmatively that any duty alleged to be violated by the city was connected with a private or corporate duty, as distinguished from a governmental duty, or that the alleged negligent person was, at the time of the collision, a servant of the city, or that the act in connection with which the alleged tort was committed, was

within the corporate powers of the city, or that the alleged offending officer or servant was acting within the scope of his authority, or that the city was guilty of any negligence in connection with said act; that deceased was not free from contributory negligence; that the father of deceased was negligent, which was imputable to deceased, and he was not free from contributory negligence; that the car which killed deceased was the police car of the city, occupied by police officers; and that the only deduction which could be drawn from the evidence would be that said officers were acting for the city in the performance of police duties, and in a governmental capacity. The questions so raised are not all argued; but manifestly, some of them are not well taken.

The errors relied upon by appellant are covered, in the main, by the statement that they relate to the court's requiring plaintiff to introduce evidence to show that the city automobile was upon a police mission, this being an affirmative defense pleaded by the defendant; requiring plaintiff to show that Callander was acting for the city, and in the scope of his employment, because the defendant's pleading concedes that, and because no such issue was tendered by the pleadings, the controversy being as to whether or not he was acting in a governmental capacity; and excluding offered evidence to the effect that the automobile and Callander were employed at other times in a ministerial capacity; that, even though the automobile was upon a police mission, there was a question for the jury as to negligence of the city in allowing the pavement to become out of repair, and that this was a concurring proximate cause of the injury. Some of these matters relate to the procedure, and are not likely to occur on retrial. For instance, we do not understand that the court required plaintiff to put in evidence on the question as to governmental functions, and in regard to the scope of the employment of Callander, but rather permitted

plaintiff to do so. At any rate, the evidence was introduced, and, we think, shows that Callander was acting within the scope of his employment.

1. In view of a new trial, we think it proper to say that the burden of proof was upon the defendant to first introduce evidence to establish the affirmative defense pleaded by it, that the automobile and the driver, Callander, were engaged in a governmental act; especially is this so, since defendant pleads this matter affirmatively. Appellant cites, among other cases, *Mansfield v. Mallory*, 140 Iowa 206; *Wingate v. Johnson*, 126 Iowa 154, 157; *Hoffman v. Independent School Dist.*, 96 Iowa 319. We are of the opinion that these cases sustain the proposition. In any event, the evidence introduced by plaintiff made a prima-facie case.

1. EVIDENCE: allegation of governmental capacity.

2. Coming now to one of the vital questions in the case, appellant contends that a city is liable for its negligence when it acts in a ministerial or corporate capacity, and that the evidence introduced tended to prove that defendant city was so acting at the time of the accident in question, and that the driver, Callander, was employed at said time, and prior thereto, in a ministerial capacity; and that, therefore, the case should have been submitted to the jury on this issue. Appellee does not dispute this proposition, but claims that the evidence shows that the act complained of was governmental. The city contends that a city acting in a governmental capacity is the agent of the state in enforcing police regulations, and is not liable for any wrongs committed by its agents or officers in relation thereto, either directly or indirectly, citing *Saunders v. City of Fort Madison*, 111 Iowa 102; *Calwell v. City of Boone*, 51 Iowa 687; *Ogg v. City of Lansing*, 35 Iowa 495; *Vanhorn v. City of Des Moines*, 63 Iowa 447; *Looney v. City of Sioux City*, 163 Iowa

2. MUNICIPAL CORPORATIONS: nongovernmental acts.

604 (51 L. R. A. [N. S.] 546) ; *Gillespie v. City of Lincoln,*
35 Neb. 34 (52 N. W. 811)..

We shall not attempt to review all these cases. The
question for determination is whether the facts in the in-
stant case bring the case within plaintiff's cases or defend-
ant's. There can be no question that police officers, in the
performance of their duties in making arrests and the like,
or firemen, in the performance of their duties as such, and
health officers, are not regarded as the agents or servants of
the city, but their duties are rather of a public nature, and
as to such acts, the city is not liable. A fireman, hastening
to a fire then raging, and doing similar acts, is clearly en-
gaged in a duty of a public nature; so, too, in the case at
bar, had the city automobile, with the policemen in it, been
hastening to answer a riot call, or doing some act of that
nature, it would be equally clear that this would have been
an act of a public nature. It is doubtless true that other
acts so connected with an act similar to those indicated as
to be a part of it, would likewise be of a public nature. A
case that goes, perhaps, as far as any, is *Gillespie v. City of
Lincoln,* supra. There, a person was struck and killed by a
ladder truck belonging to the fire department of the city,
through the negligence of the driver thereof, a member of
said department, while driving along one of the streets for
the purpose of exercising a team of horses belonging to the
department; but in that case, the holding was partly be-
cause of the Nebraska statute, which was held to be, in a
sense, mandatory. And it was there conceded by the plain-
tiff that the exercising of the team was a proper thing to do,
and lies in the way of a proper discharge of the functions of
the department. The court, taking this for granted, said
that the driver of the team was properly exercising the func-
tions of the fire department, and within the line of duty of
the driver. On the other hand, as laid down in the cases, a
city is not exempt from liability for every act of a police-

man, simply because he is such. Thus, in *Shinnick v. City of Marshalltown,* 137 Iowa 72, one of defendant's police officers, at the direction of the mayor, placed a rope across one of the principal streets for the purpose of stopping travel. It was held that the city was liable, but on the ground, it is true, that this constituted a nuisance, and the city was bound to keep its streets free from nuisances. In *Twist v. City of Rochester,* 37 App. Div. 307 (55 N. Y. Supp. 850), affirmed without opinion in 165 N. Y. 619 (59 N. E. 1131), it was held that a city could not escape liability for the defective construction of its patrol line used by the police department of the city, on the ground that the department was created by law for the discharge of a public duty. The court based its decision upon the fact that the patrol line was the result of a business arrangement on the business side of the municipality, and it was in no sense in furtherance of a public duty. When the line was made, the city could use it for any legitimate purpose connected with its police, or. otherwise, without changing the character of the thing from a private, pecuniary matter, to a public one. So, in the instant case, the city automobile could be used for any purpose connected with its police, or, as contended by appellant was the fact, it could be used for other purposes than police duty.

3. Evidence: issue on capacity in which employee acted.

It would be quite material, of course, how the automobile was being operated and used at the time in question. We may observe, in passing, that, though this is true, we think it was competent, under the circumstances of this case, to show, as was attempted by plaintiff, that the car in question had been driven by Callander under his employment in a ministerial or corporate duty at other times not too remote from the transaction in question, and this is especially so since the city sought to have the inference drawn that, because the word "Police" appeared on the automobile, it was, in fact, used exclusively for police purposes.

It is equally well settled by the authorities that a city is liable for its negligence when it acts in a ministerial or corporate capacity. We shall not repeat the testimony bearing upon this subject. It seems to us that, in order that the city may escape liability, the negligence complained of must bear some just and true relationship to the enforcement of law. If this automobile was being driven rapidly to quell a riot, or to protect the lives or property of citizens, then the speed of the car would bear a true relationship to the enforcement of law. 28 Cyc. 1299. If it be conceded, for the sake of argument, that the sole mission of the car in question and its driver was to haul policemen to their beats, could it be said that the city was acting in a governmental capacity? We think not. It could not reasonably be said that it is necessary for policemen to be hauled to their beats at the rate of 45 miles an hour, through the streets of a city. If it is a part of a city's policy to haul policemen to their beats in the outlying districts of the city, this is something which suits the convenience or economy of the city, and is an act which it does as a part of its general business, and does not relate to the enforcement of law. Such matters partake of the general or corporate business of the city. The act of a policeman in sweeping out police headquarters, or of a fireman in burnishing the brass on his engine, would, in a sense, be connected with other duties which might be governmental; but it seems to us that this would be too remote, and carry this rule too far. It should be borne in mind, too, that Callander, the driver, was not a policeman himself, but was driving the car for the purposes for which he was employed; and he is the person who is charged with negligence, and not the policemen. It does not appear that any of the policemen in the car had anything to do with the operation of the car, nor is recovery sought because of their negligence. It is conceded in argument that Callander was negligent. The writer concedes that the point presented is fairly debatable,

but the evidence is somewhat meager, and, as before indicated, was drawn out on cross-examination of plaintiff's witnesses.

3. Appellant contends that, even though the act in question was governmental, the concurrent negligence in permitting the defective condition of the street should have been submitted to the jury. Under the evidence heretofore referred to, we think the court should have submitted to the jury the issue as to the defective condition of the street. The duty of the city with reference to its streets is a corporate duty. *Gould v. Schermer,* 101 Iowa 582; *Lehman v. Minneapolis & St. L. R. Co.,* 153 Iowa 118, 125; *Langhammer v. City of Manchester,* 99 Iowa 295; *Walrod v. Webster County,* 110 Iowa 349; *Sewing v. Harrison County,* 156 Iowa 229, 232; *McGee v. Jones County,* 161 Iowa 296, 303; *Burk v. Creamery Pkg. Mfg. Co.,* 126 Iowa 730, 734.

*4. MUNICIPAL CORPORATIONS: ministerial and governmental negligence.*

For the reasons given, the judgment of the district court is reversed, and the cause is remanded for further proceedings in harmony with the opinion.—*Reversed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.