Helen Leckliter, Appellee, v. City of Des Moines et al., Appellants.

No. 40377.

252

November 18, 1930.

*Charles Hutchinson, F. T. Van Liew,* and *Chauncey A. Weaver,* for appellants.

*Stipe, Davidson & Davidson* and *Clark, Byers & Brunk,* for appellee.

GRIMM, J.—It is alleged by the plaintiff that, on the evening of the 19th of December, 1928, she received severe personal injuries, while riding as a passenger in a Ford coupé automobile,

 which, at the time of the accident, was going north on Fourth Street in the city of Des Moines, at a reasonable rate of speed, and on the right side of the street; that the said automobile was struck on its right side by a police patrol wagon, which was coming from the east on Court Avenue, which vehicle was owned by the city of Des Moines, and was being driven by the defendant Glen Crawford, one of the employees of the city. It is claimed that the police patrol was driven at a high, negligent, and dangerous rate of speed. It is claimed that the driver did not have said motor vehicle under proper control, and that he failed to sound a bell or give any warning of approach. It is alleged that the motor vehicle was driven in violation of the city ordinances regulating traffic and speed, and that the said wagon was then being used in a ministerial and corporate capacity by the city of Des Moines.

The city answered with a general denial, and, in addition, affirmatively pleaded that the motor vehicle owned by the city of Des Moines was being used for the purpose of transferring police officers from police headquarters in East Des Moines to patrol beats in West Des Moines at or about the hour of change from the afternoon to evening shift, as has been the custom for a long period of years; that the operation of such motor vehicle in the manner described was in the exercise of a governmental function; and that for injuries from or incidental thereto, there can be no liability in tort or recovery in damages against the defendant city under the laws of this state. The defendant city also pleaded certain ordinances outlining the preferential rights of public vehicles at street intersections, and of police and fire departments when engaged in the discharge of public duty. The city also affirmatively alleged contributory negligence on the part of the plaintiff, and that she was guilty of a violation of the city ordinance in relation to motor traffic.

The defendant Glen Crawford pleaded that he was a police officer at the time of the accident, and that his acts were governmental, for which there would be no liability or damages on his part; that the plaintiff was violating the city speed and traffic regulations, and was guilty of contributory negligence.

Briefly stated, the facts are as follows: On the evening of

December 19, 1928, the plaintiff, Helen Leckliter, accompanied by Mark J. Sluss, left their home in the city of Des Moines to go to the Rock Island Station, to meet plaintiff's brother, Horace Leckliter, who was expected on the 7:15 evening train, coming from the east. The train arrived about an hour late. After the arrival of the guest, the three young people walked from the station to where the car was parked, on Fourth Street, just north of the station. They started for the Leckliter home. Sluss was at the wheel, Horace Leckliter was sitting on the right side, and the plaintiff sat between them. The car was started north on Fourth Street. One block north of the Rock Island Station, Fourth Street intersects with Court Avenue, which latter is a thoroughfare, starting from the east side of the Polk County courthouse, on the west side of the river, and continuing east across the river to the east side, where the municipal building and police station are situated, and thence on towards the state fair grounds. At the intersection of Fourth Street and Court Avenue, the Ford coupé in which the plaintiff and her companions were riding was struck by a Des Moines police patrol wagon, driven by the defendant police officer Glen Crawford, in which wagon there were, at the time, five police patrolmen, in uniform, being taken, after they had reported for duty and answered roll call, from the police station to their west side beats. It appears that it has been a custom of long standing for the city to transport its police officers in this manner. The police officer Glen Crawford was driving under specific orders from the then chief of police. The police car in use on that night had been in departmental service for many years, and, so far as the record shows, had never been used for any other purpose. It was plainly marked on the sides in large letters, ''Police Patrol.''

There is no dispute about the fact that the plaintiff suffered injuries, nor is there any dispute that the police patrol was traveling on the north side of Court Avenue, just before the accident. At the southeast corner of the intersection of Fourth Street and Court Avenue there is, instead of a building, a large space, occupied by a filling station, the building of which is well set back, leaving only one or two small filling station pumps at the corner of the lot. The west wall of the filling station building is 23 feet easterly of the east property line of Fourth Street, and 17.7 feet south of the south property line of Court Avenue.

This afforded the driver of the Ford coupé a clear view of Court Avenue, as the Ford was being driven north in Fourth Street, for a long distance east in Court Avenue before the Ford reached the south curb line of Court Avenue. It appears that Court Avenue is 67 feet wide from curb to curb, and Fourth Street is 42 feet wide.

There is a dispute about the speed at which the police patrol was being driven. The police officers all testified that the police patrol gong was sounded almost constantly from the start at the police station on the east side of the river until the accident. Three disinterested witnesses also testified on the same subject and to the same effect. The plaintiff's associates and others testified that they did not hear the gong sound. The plaintiff herself testified that she saw the police car coming from the east when it was about three quarters of a block east of Fourth Street, and that she called the attention of Sluss, the driver of the car, to that fact. To this warning he answered, "Yes." It is claimed that the Ford car was going at not to exceed 12 miles an hour, and was under control; yet no attempt was made to stop the Ford, and permit the police patrol to pursue its course.

At the close of all the evidence, the defendants moved for a directed verdict. These motions were overruled, and exceptions were properly taken. The jury returned a verdict for plaintiff against both defendants, and from the judgment rendered thereon, this appeal has been taken.

I. It is the contention of the appellants that, without dispute, the evidence shows that the police patrol automobile involved in the accident was under the operation and control of police officers when on duty and while the city was engaged in the exercise of a governmental function, and that for injuries thus arising there is no liability in tort or for recovering damages against a municipal corporation, under the laws of this state. The rule is firmly established in this and other jurisdictions that, where a municipal corporation is performing a duty imposed upon it as the agent of the state, in the exercise of strictly governmental functions, there is no liability to private action on account of injuries resulting from the negligent acts of officers or agents thereunder, unless the liability is definitely fixed by statute. As was said in *Harris v. City of Des Moines,* 202 Iowa 53:

"A governmental duty is one involving the exercise of governmental power, and is assumed for the exclusive benefit of the public. A sovereign act of government cannot be submitted to the judgment of the courts, since government is not the subject of private law. It rests upon the municipality to determine whether it will exercise its governmental powers, and if it does, such functions do not create civil causes of action. Upon this theory, a city is not liable for the acts of its officers in attempting to enforce police regulations."

These rules are so widely recognized and firmly established that we need cite no authorities in support thereof. The difficulties arise mostly out of the application of these rules to the particular case in hand. It being assumed, but not decided, that the driver of the police patrol was negligent before and at the time of accident, the question is whether, under the undisputed facts in this case, there is any liability on behalf of the city. If the accident grew out of the exercise of its governmental functions by the city, then the city is not liable.

It is undisputed that the driver of the police patrol on that occasion was an officer of the police force of Des Moines, and under civil service. He was in his uniform, and on duty. The time had come for the change from the day to the evening shift for police patrolmen in the city of Des Moines. The officers whose duty it was to patrol the beats in the evening had reported for duty at the city police station on the east side of the river. They were in uniform, and had answered to roll call, and were under orders of the chief of police. It had been the custom for a long time, in order to facilitate the work and enhance the efficiency of the police department, to transfer these officers by this police patrol wagon to their respective territories over which the various patrolmen traveled. Under personal orders issued by the chief of police, the defendant Crawford drove this police patrol in which were riding the said officers who had reported for duty and were under orders.

Under Chapter 292 of the 1927 Code, designated "General Powers," applying to cities and towns, there appears Section 5738, the material portion of which is as follows:

"Cities and towns * * * shall have the general powers and privileges granted * * * for the protection of their property

and inhabitants, and the preservation of peace and good order therein * * *.''

Chapter 326 of the Code of 1927 pertains to government of cities by commission, and Section 6564 thereof, under the heading of ''General Powers and Duties,'' contains in its material portions the following:

''The council shall have and possess, and the council and its members shall exercise, all executive, legislative, and judicial powers and duties now had, possessed, and exercised by the mayor, city council,'' and other officers.

Section 6588 of the same chapter provides in its material part as follows:

''The council of any city organized under this chapter [commission form of government] shall have the power to levy a special tax upon all taxable property in said city, not to exceed one mill on the dollar each year, for the purpose of purchasing and maintaining apparatus and equipment for use in police service in the department of public safety.''

As was said in 1 Dillon on Municipal Corporations (5th Ed.), Section 109:

''In *its governmental or public character*, the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state, rather than for itself.''

It will not be questioned but that, in establishing and maintaining a police department in a city, such city is acting for the public good, on behalf of the state, rather than for itself. The legislature clothed the city with power to maintain such an organization as a convenient method of exercising a function of government. By this means the state intends to establish and maintain peace, security, health, and the general welfare.

It is well established in this state that a municipal corporation is not ordinarily liable for the torts of a police officer while in the enforcement of police regulations. *Calwell v. City of Boone,* 51 Iowa 687; *Easterly v. Incorporated Town of Irwin,* 99 Iowa 694; *Lahner v. Incorporated Town of Williams,* 112

Iowa 428; *Looney v. City of Sioux City,* 163 Iowa 604. See, also, *Norman v. City of Chariton,* 201 Iowa 279; *Harris v. City of Des Moines,* 202 Iowa 53. We think it likewise follows that, if the defendant Crawford, in the case at bar, was engaged in any part of the governmental functions of the city of Des Moines at the time of this accident, the city cannot be held liable.

The appellee lays much stress upon the case of *Jones v. City of Sioux City,* 185 Iowa 1178. Plaintiff's intestate was struck by an automobile belonging to the city and driven by its employee. The petition alleges, among other things, that the city was negligent in that the car was driven at a high, reckless, and negligent rate of speed; that the pavement of the street at the place where the accident occurred was in a rough, uneven condition; that the defective condition of the street was a concurring proximate cause of the injury; and that the collision would not have happened if the street had not been in such defective condition. At the close of plaintiff's evidence, the court sustained a motion for a directed verdict in favor of the city. The case was reversed, the court saying:

"Under the evidence heretofore referred to, we think the court should have submitted to the jury the issue as to the defective condition of the street. The duty of the city with reference to its streets is a corporate duty."

The case was reversed and remanded. The opinion contains some irrelevant discussion by way of dicta in reference to the liability of cities in transporting policemen when they were not being transported in answer to a riot call, or something of that nature. The reversal, however, is upon the failure of the court to submit to the jury the issue as to the defective condition of the street.

This *Jones* case was again before this court (192 Iowa 99), in an opinion filed May 3, 1921. In commenting on the first opinion in the *Jones* case, this court says:

"As will be there seen [185 Iowa 1178], the reversing opinion concludes as follows: 'Appellant contends that, even though the act in question was governmental, the concurrent negligence in permitting the defective condition of the street should have

been submitted to the jury. Under the evidence heretofore referred to, we think the court should have submitted to the jury the issue as to the defective condition of the street. * * * For the reasons given, the judgment of the district court is reversed, and the cause remanded for further proceedings in harmony with the opinion.' "

The case was again reversed, solely because the court, in the second trial also, failed to submit to the jury the question of the city's negligence by reason of its defective streets.

In *Bradley v. City of Oskaloosa*, 193 Iowa 1072, in an opinion filed June 23, 1922, the plaintiff's decedent was killed when struck and run over by a fire engine belonging to the city, which was *returning* from a fire to the garage. This court said:

"A municipality is under no obligation to provide for a fire department in order to protect the property of its residents. Whether a city shall have its own fire department, or what shall be its character and extent, is governmental, and it is the recognized rule in this state that the employees in the conduct and operation of the fire department of a city are not the agents and servants of the city, but that they act as officers charged with a public service, for whose negligence no action will lie against the city. *Saunders v. City of Fort Madison*, 111 Iowa 102, with cases cited. See, also, *Hillstrom v. City of St. Paul*, 134 Minn. 451 (159 N. W. 1076). * * * There is but one proximate cause of the death of plaintiff's decedent and the damages predicated thereon, and that is the negligent driving by the fireman in charge of the fire engine. This question has been answered on the theory of nonliability, under a rule heretofore announced by this court. That rule is controlling."

What was said in that case in reference to a fire department can equally well be said in this case in reference to a police department. Whether a city shall have a police department or what shall be its character and extent is governmental. Members of the police department are not agents and servants of the city in the sense that the city may be liable for wrongs committed by them in the discharge of their duties in that regard. Certainly, if, as is held in the *Bradley* case, a city is exercising its governmental function when a fire engine is *returning* to the

garage after a fire, a city is, in the same way, and to a much more definite extent, exercising its governmental function when, under the order of the chief of police, its police patrol wagon is being driven by a police officer, in uniform, under orders, in service, in transporting other officers who had reported for duty in uniform and responded to roll call and were being conveyed from the police station to their respective beats. As was said in the *Bradley* case:

"The defendant city is merely an arm of the sovereign state, and in the exercise of its governmental functions its agents and servants, through negligence either of omission or commission, do not cast upon the municipality a civil liability unless the same is imposed by statute."

See, also, *Norman v. City of Chariton,* 201 Iowa 279, where numerous cases are collected and compared; *Hensley v. Incorporated Town of Gowrie,* 203 Iowa 388; *Rowley v. City of Cedar Rapids,* 203 Iowa 1245; *Mocha v. City of Cedar Rapids,* 204 Iowa 51. A great many cases from other jurisdictions might be cited in support of this proposition. We will content ourselves with citing only a few. *Aldrich v. City of Youngstown,* 106 Ohio St. 342 (140 N. E. 164, 27 A. L. R. 1497); *Engel v. City of Milwaukee,* 158 Wis. 480 (149 N. W. 141); *Wilcox v. City of Rochester,* 190 N. Y. 137 (82 N. E. 1119, 17 L. R. A. [N. S.] 741); *Scibilia v. Philadelphia,* 279 Pa. St. 549 (124 Atl. 273, 32 A. L. R. 981); *Moulton v. City of Fargo,* 39 N. D. 502 (167 N. W. 717); *Jones v. City of New Orleans,* 143 La. 1073 (79 So. 865); *Miller v. City of Macon,* 152 Ga. 648 (110 S. E. 873); *Tzatzken v. City of Detroit,* 226 Mich. 603 (198 N. W. 214).

II. It is the contention of the plaintiff that, by reason of a change in Section 4863, Chapter 251, of the Code of 1924, as found in Section 4863, Chapter 251, of the Code of 1927,  the immunity from liability for tort in the exercise of governmental functions, in so far as the operation of motor vehicles is concerned, has been entirely eliminated. The said section, as found in the Code of 1924, is as follows:

"The term 'motor vehicle' shall include all vehicles propelled by any power other than mus-

cular power, except traction engines, road rollers, fire wagons and engines, police patrols, city and town ambulances, city and government vehicles, clearly marked as such, and such vehicles as are run only upon tracks or rails.''

In the 1927 Code, said section reads as follows:

''The term 'motor vehicle' shall include all vehicles propelled by any power other than muscular power except traction engines, road rollers, and such vehicles as are run only upon tracks or rails.''

It is plaintiff's contention that, inasmuch as fire engines and wagons, police patrols, city and town ambulances, and city and government vehicles, are now brought under the term ''motor vehicle,'' therefore the immunity previously existing in this state, and so widely recognized in other jurisdictions, has been abrogated. Was it the intention of the legislature by the change in said Section 4863 to radically change the law of this state as it applies to the liability of cities and towns in the exercise of its governmental functions? In *Sullivan v. School District*, 179 Wis. 502 (191 N. W. 1020), that court said:

''* * * it is not to be presumed that the legislature intended to abrogate or modify the rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. * * * In connection with what has been said, there is also the general rule, adopted both by this court and the Supreme Court of the United States, that general statutes are not to be construed to include, to its hurt, the sovereign.''

In *Balthasar v. Pacific Elec. R. Co.*, 187 Cal. 302 (202 Pac. 37, 19 A. L. R. 452), the Supreme Court of California was construing the provisions of the California Motor Vehicle Act. On the issue of specific and implied governmental immunity, the California court cites Justice Story of the Supreme Court of the United States in the case of *United States v. Hoar*, 2 Mason 311 (26 Fed. Cas. 329 [No. 15373]), in the use of the following language:

'' 'Where the government is not expressly or by necessary

implication included, it ought to be clear, from the nature of the mischiefs to .be redressed, or the language used, that the government itself was in contemplation of the legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the legislature are meant to regulate and direct the acts and rights of citizens; and in most cases the reasoning applicable to them applies with very different, and often contrary, force to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act.' ''

See, also, *In re Tidewater Coal Exchange,* 280 Fed. 648.

In *LaCock v. City of Schenectady,* 224 App. Div. 512 (231 N. Y. Supp. 379), that court had before it for consideration a statute reading as follows:

"Every owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The court said:

"In our opinion, this provision does not apply to municipalities when acting as agencies of the state. We have shown above the nature and extent of the immunity from action had by a city because of its acts or the acts of its officers performed while acting as a state agency in organizing and controlling a police force. An immunity so grounded admits of no exception other than that which the legislature has enacted; it is not taken away by legislation not specific in its meaning. (*Matter of Hoople,* 179 N. Y. 308, 311.) While the state may give its consent to be prosecuted by action, a general statute, by implication, does not give the required consent. Such consent must be expressed in unequivocal language. Consent to the prosecution of a city for its acts or omissions when, as the agency of the state, exercising general governmental powers conferred upon it, must be ex-

pressed with like language. I do not find such language in this act. It seems absurd to say that the legislature, by its general language in this section of the Highway Law, intended to change the long recognized rules which have application here.''

Many other cases along the same line might be cited.

Chapter 251 of the Code of 1924, in which the said Section 4863 is found, contains the general Motor Vehicle Law and Law of the Road. The same chapter contains provisions in reference to applications for registration and license; it  provides for the display of number plates, the rights of the road in passing and meeting other vehicles, and many other details too numerous to mention. We think it is much more reasonable to assume that the legislature removed fire wagons and engines, police patrols, city and town ambulances, and city and government vehicles from the exception contained in Section 4863 in order that, to some extent, and so far as applicable, the various provisions of the chapter might be applied to them, than that it was the legislative intention to remove the immunity then existing in favor of the municipality for the operation of such instruments in the exercise of its governmental functions. As we view the law, such change of public policy requires a definite legislative expression, and cannot be found by mere implication. There is here no such expression. The change in Section 4863 did not remove the immunities applying to such vehicles in Iowa.

III. So far as the appeal of the defendant Glen Crawford is concerned, the only error relied upon for reversal has to do with contributory negligence on the part of the plaintiff. We  do not here decide whether the immunity belonging to the municipality, in the exercise of its governmental functions, applies also to the driver of the police patrol. The question is not argued, and we hereby especially reserve it.

All of the witnesses on behalf of the plaintiff who testified on the subject said they did not hear any gong sounded by the police patrol. The occupants of the Ford car testified that they did not see the words ''Police Patrol'' on the side of the vehicle.

In other words, they did not know that a vehicle with any special rights was approaching the intersection, and therefore they assumed that it was coming at a rate of speed which would not have been negligent under the circumstances for any ordinary automobile. It was under such circumstances and with such knowledge that the Ford driver kept on driving north, assuming that he had plenty of time to pass the intersection before the vehicle from the east would arrive at the intersection. It is undisputed in the record that, at the time the Ford car reached the south side of the intersection, the police patrol was three quarters of a block east.

A jury might well find that, in the absence of any knowledge that the approaching vehicle was a police patrol, and in the absence of any knowledge of the sounding of a gong, or other similar warning from the police patrol, the driver of the Ford car was not guilty of contributory negligence in passing north through the intersection. There is in the record no evidence of any recklessness on the part of the Ford driver. The question of the contributory negligence of the plaintiff was submitted to the jury.

Under the circumstances disclosed in this case, we cannot say, as a matter of law, that the plaintiff was guilty of contributory negligence. That is the defendant Crawford's only claim of error on this appeal. It follows that the cause, so far as the defendant Crawford is concerned, must be, and it is,— *Affirmed.* On the appeal of the city, the cause must be, and it is,—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.